IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 20, 2022 Session

# DELRICK BLUE ET AL. v. CHURCH OF GOD SANCTIFIED, INC., ET AL.

**Appeal from the Chancery Court for Maury County**
No. 19-481          David L. Allen, Judge[1]

—————————

## No. M2021-00244-COA-R3-CV

—————————

This case involves a church property dispute. The plaintiffs are trustees of a local church congregation who were attempting to establish their congregation as separate from the church's national governing body and from a local congregation, with which the plaintiffs had previously been joined, that desired to remain affiliated with the national church body. Naming as defendants the national body and trustees of the congregation desiring to remain with the national body, the plaintiffs sought, *inter alia*, declaratory judgment that real property upon which the local church building was located belonged to their congregation and was not held in trust for the national body as the national body's written policy dictated. The defendants filed motions for summary judgment, asserting in part that pursuant to our Supreme Court's decision in *Church of God in Christ, Inc. v. L. M. Haley Ministries, Inc.* 531 S.W.3d 146 (Tenn. 2017), the national body's written policy governed ownership of the property, which had therefore been held in trust for the national body. Following a hearing, the trial court determined that the ecclesiastical abstention doctrine precluded the court's hearing any claims except the property dispute and that the defendants were entitled to summary judgment declaring the national body as the owner of the property and associated personalty and the congregation aligned with the national body as entitled to use and possession of the property and associated personalty. Upon the plaintiffs' appeal to this Court and motion to the trial court for a stay, the trial court granted a stay of the judgment pending appeal and entered an order, *inter alia*, directing the plaintiffs to pay expenses related to the property while the stay remained in effect. The defendants filed a Tennessee Rule of Appellate Procedure 7(a) motion seeking review of the trial court's stay order, which this Court denied. The plaintiffs subsequently filed a motion to supplement the record with their response to the Rule 7(a) motion, which, upon limited remand, was granted by the trial court. The defendants then filed a motion requesting that this Court strike the references to the supplemented materials in the plaintiffs' principal brief and disregard post-judgment facts in the supplemented materials. Discerning no reversible error in the trial court's grant of

---

[1] Sitting by interchange.

summary judgment in favor of the defendants, we affirm the trial court's summary judgment order in its entirety. However, because the supplemented materials included documents not reviewed by the trial court at the summary judgment stage, we grant the defendants' motion to disregard the supplemental materials and strike the plaintiffs' references to them. We deny the defendants' request for attorney's fees and costs incurred on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Thomas F. Bloom, Nashville, Tennessee, for the appellants, Delrick Blue, Bobby Lacy, Cheryl Sweeney, Teresa Nevette, and Bernice Ryan, all in their official capacities as Trustees of East 8th Street Church of God (unincorporated) f/k/a East 8th Street Church of God Sanctified (unincorporated).

Donald Capparella and Kimberly Macdonald, Nashville, Tennessee, and Travenia Holden, Lebanon, Tennessee, for the appellees, Church of God Sanctified, Inc.; Bishop G. R. Hill, General Overseer of the Church of God Sanctified, Inc.; Thaggett Polk; Rita Polk; Larry Lockridge; and William Craig, Administrator of the Church of God Sanctified, Inc.[2]

**OPINION**

I. Factual and Procedural Background

The church property at the center of this dispute is located at 419 East Eighth Street in Columbia, Tennessee ("the Property"), and is comprised of three adjoining parcels of land originally conveyed to the church trustees and their successor trustees in transactions respectively dated 1903, 1953, and 1972. Copies of the deeds related to the three parcels are in the record as exhibits to pleadings, and it is undisputed that title for all three parcels was never conveyed away from church trustees and their successors. On September 13, 2019, the plaintiffs—Delrick Blue, Bobby Lacy, Cheryl Sweeney, Teresa Nevette, and Bernice Ryan, in their capacities as Trustees of East 8th Street Church of God (unincorporated) f/k/a East 8th Street Church of God Sanctified (unincorporated) (collectively, "Plaintiffs")—initiated this action by filing a complaint and petition for

---

[2] Although they joined in the appellate brief filed by the other appellees and did not file a separate appellate brief, appellees Thaggett Polk, Rita Polk, and Larry Lockridge were also represented on appeal by their trial counsel, J. Thomas DuBois and Dakota W. Underwood.

declaratory judgment in the Maury County Chancery Court ("trial court").[3] Plaintiffs identified the congregation they represented as the "Local Church."

Plaintiffs named as defendants The Church of God Sanctified, Inc., which Plaintiffs described in their complaint as "the national and overseeing body" of the Church of God Sanctified, as well as two members of the national body's leadership: General Overseer Bishop G. R. Hill and Administrator William Craig (collectively, "the National Body"). Plaintiffs also named three local defendants—Thaggett Polk, Rita Polk, and Larry Lockridge—whom Plaintiffs acknowledged were "previously members" of the local church but alleged were "agents and operatives" of the National Body. In its final order, however, the trial court found that the Polks and Mr. Lockridge represented the established local church, or "Mother Church" as the court termed it, and that Plaintiffs represented "a portion of the congregation of Mother Church which split apart from Mother Church during a congregational split in the summer of 2019."

Apart from the National Body, terminology to describe the parties in this case is somewhat problematic. The trial court in its order granting the defendants' motions for summary judgment noted that upon its "own deliberations and decision," it had "adopt[ed] many of the Findings of fact and Conclusions of Law proposed by the Defendants." The trial court thereby utilized the defendants' terminology of "Mother Church" for the local defendants. In their appellate brief, Defendants refer to Plaintiffs as "New Church." Plaintiffs, however, insist that they represent the "Local Church" and are not a "new" congregation. For ease of reference in this Opinion and to acknowledge the parties' respective positions, we will hereinafter refer to Plaintiffs as "Local Church" and to the local defendants as "Mother Church" or, when applicable, to the National Body and Mother Church acting together as "Defendants." At times when referring to the church located on the Property but not specifically to the parties, we will employ the name, "East 8th Street Church of God." We recognize, however, that "Sanctified" has also been part of the church's name for many years through its relationship with the National Body.

Defendants trace the beginning of this dispute to the summer of 2019 when an interim pastor, George Bullock, was under a review that resulted in the National Body's seeking to remove him as pastor of the East 8th Street Church of God. According to Defendants, Pastor Bullock's supporters staged a "rebellion" and began the process of attempting a "takeover" of church property. Local Church takes issue with Defendants'

---

[3] Plaintiffs initially styled the "Plaintiff" in their complaint and petition as "East 8th Street Church of God Sanctified, a/k/a East 8th Street Church of God." When they subsequently amended their complaint and petition, they named the individual plaintiffs acting as trustees of the "East 8th Street Church of God (unincorporated) f/k/a East 8th Street Church of God Sanctified (unincorporated)."

description, maintaining that it represents the local church from its inception, a single entity, purportedly unaffiliated with the National Body, "THE church which has worshiped on the property [at issue] for over 100 years." However, Local Church also traces the beginning of the dispute to the summer of 2019 and a request it made to sever ties with the National Body.

In its petition and complaint, Local Church averred that in August 2019, acting through its trial counsel,[4] Local Church had sent a letter to the National Body in which it "stated its intent to separate and disaffiliate from the **NATIONAL BODY** and to assert its independent property rights and ownership of its church building . . . ." Local Church attached to its petition a reply that had been sent by Bishop Hill on August 20, 2019, stating that if "an affiliate desires to disaffiliate from the national body there is a procedure in place which an affiliate can institute which upon approval will result in their disaffiliation from the national body of the Church of God Sanctified Incorporated." Bishop Hill further stated in the letter in pertinent part:

> [T]he procedure for a church to disaffiliate from the national body is as follows:
>
> > A letter requesting disaffiliation from the national body of the Church of God Sanctified Inc. must be sent to the General Overseer and National Board of Bishops indicating the reason for the request for disaffiliation, the request must be signed by the pastor of the church and each member of the Board of Deacons. In the absence of a pastor the Chairman of the Board of Deacons serves as the top official of the church, therefore his signature represents the leader of the church. Upon receipt of the letter it will be reviewed and upon approval the church will be notified of the date in which their disaffiliation from the national body will be honored. Once disaffiliation has been approved the word "Sanctified" cannot be part of the new church name.
>
> Until this disaffiliation procedure has been initiated and approved the East 8th Street Church of God Sanctified will continue to be an active affiliate in the national Church of God Sanctified body. In the Church of God Sanctified Inc. manual section II-2 it states any church that has received ministerial support and legal assistance from the Church of God Sanctified, Inc. shall cease to be an autonomous entity, additionally the

---

[4] Local Church was represented in the trial court by attorney Mark E. Chapman.

church will continue to be bound physically and spiritually to the Church of God Sanctified, Inc. The East 8th Street Church of God Sanctified has received assistance beginning in the year 1900 and it has continued through this present time in 2019.

Local Church alleged in its petition that the "arbitrary requirement" set forth by the National Body was "not detailed in the By-Laws that were in existence at the time the **LOCAL CHURCH** was formed, nor is it mentioned in the **LOCAL CHURCH**'s deed." Local Church stated that "rather than allow the **NATIONAL BODY** to dictate the terms of the separation," it was requesting that the trial court "make a Declaratory Judgment." Local Church also asserted an "alternative theory and cause of action" to quiet title, as well as claims of intentional interference with business relations and conversion against Mother Church based on Mother Church's requests to recover a computer and actions in closing a bank account to Local Church and causing church building doors to be locked against Local Church's members. Local Church requested that a declaratory judgment and judgment for quiet title be entered in its favor, declaring it "totally independent and disaffiliated" from the National Body and "the proper owner and title holder" of the Property. Local Church also requested a temporary restraining order preventing Defendants from "hindering, threatening, and interfering" with its use of the Property; an award of pecuniary damages in the amount of $100,000; punitive damages; and attorney's fees.

On September 24, 2019, the National Body filed a response to the portions of the petition in which Local Church sought a temporary injunction, and the National Body filed a motion seeking a more definite statement pursuant to Tennessee Rule of Civil Procedure 12.05.[5] As to the petition for temporary injunction, the National Body asserted that it was not validly filed and argued, *inter alia*, that the trial court did not have subject matter jurisdiction because the ecclesiastical abstention doctrine governed the case such that "there [was] no framework under which an injunction could be issued." Mother Church, acting through separate counsel, filed a response on September 25, 2019, objecting to Local Church's request for a temporary injunction and "fully adopt[ing]" the National Body's responsive pleading.

In its response, the National Body relied on *Church of God in Christ, Inc. v. L. M. Haley Ministries, Inc.*, 531 S.W.3d 146, 156 (Tenn. 2017) ("*COGIC*"). In *COGIC*, our Supreme Court held that "the ecclesiastical abstention doctrine, where it applies, functions as a subject matter jurisdictional bar that precludes civil courts from adjudicating disputes that are 'strictly and purely ecclesiastical' in character and which

---

[5] Although the September 24, 2019 response to Local Church's complaint was styled as a response made by "Defendants," it was submitted by the National Body's counsel with a certificate of service to Mother Church's counsel and with no indication given that Mother Church had joined in the response.

concern 'theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of them.'" 531 S.W.3d at 159. However, the High Court also noted that "the ecclesiastical abstention doctrine certainly does *not* apply in every legal dispute involving religious organizations and particularly, as pertinent here, that the doctrine "does not require dismissal of every church property dispute." *Id.* The Court adopted an analytical approach to church property disputes known as the hybrid neutral-principles approach, ultimately holding: "Where a religious organization . . . includes an express trust provision in its constitution or governing documents before a dispute arises, courts in Tennessee must enforce and give effect to the trust provision, even if trust language does not appear in a deed or other civil legal document." *Id.* at 171 (footnote omitted).

The National Body attached a document, which the trial court in its summary judgment order referred to as the National Body's "Bylaws." The document is entitled, "The Manual of the Church of God Sanctified, Incorporated" (hereinafter, "the Manual"). The Manual includes a section entitled, "Church Property," which provides in part that "[a]ll real estate owned or hereafter acquired by the Church of God Sanctified, Incorporated or by any of its charges or parishes shall be deeded directly to it in its corporate name." The section further provides in pertinent part:

> All deeds by which premises are hereafter acquired for use, for a place of divine worship, shall contain the following trust clause:
>
> In trust, that said premises shall be used, kept, and maintained as a place of divine worship of the ministry and members of the Church of God Sanctified, Incorporated: subject to discipline, usage, and ministerial appointments of said church as from time to time authorized and declared by the General Assembly and the Trustee Board.

Following a hearing, the trial court entered an order on October 11, 2019, denying Local Church's request for injunctive relief upon finding that Local Church had "not appropriately pleaded its request for injunctive relief, [had] not placed itself properly before the Court and [could] not establish a likelihood of success." The National Body then filed an answer to Local Church's petition and complaint on November 14, 2019, asserting, *inter alia*, that Local Church had failed to properly plead any of its claims and that the ecclesiastical abstention doctrine acted as a jurisdictional bar to those claims.

On January 27, 2020, Local Church filed an "Amended Petition for Declaratory Judgment, Conversion, Quiet Title Pursuant to TCA § 29-14-101." As Defendants note, Local Church did not initially file a motion to amend the petition. However, upon a subsequent motion filed by Local Church, the trial court allowed the amended petition

over Defendants' objection. In its amended petition, Local Church restyled the action as brought by the individual plaintiffs as trustees of the East 8th Street Church of God (unincorporated), purportedly removed any language of affiliation between its congregation and the National Body, requested a jury trial, and pled that subject matter jurisdiction was proper in the trial court. Despite these modifications, Local Church also included in its amended petition language to the effect that its "original complaint" was incorporated "as if set out verbatim."

The National Body filed a motion for summary judgment on March 30, 2020, arguing, *inter alia*, that "the Ecclesiastical Abstention Doctrine makes clear that the Court must defer to the National Body's decisions with respect to Church procedures for disaffiliation and the requirement that local churches hold property in trust for the National Body." The National Body also filed a copy of the Manual as well as affidavits of church officers.

On April 2, 2020, Mother Church filed its own answer to Local Church's amended petition, denying all substantive allegations and raising defenses aligned with those asserted by the National Body. Mother Church concomitantly filed a counterclaim against Local Church, asserting a claim of conversion and seeking a declaratory judgment quieting title to the Property. As to the conversion claim, Mother Church alleged, *inter alia*, that Local Church had transferred funds from two bank accounts without authorization of the original signatories and had "exercised domain over the Property without the authority to do so." Mother Church sought an award of pecuniary damages in the amount of $100,000, plus "nominal and punitive damages," as well as reasonable attorney's fees.

Three months after filing its amended complaint, Local Church filed a "Provisional Motion for the Previously Filed Amended Complaint to be Deemed Accepted" on April 28, 2020, asserting in part that the National Body had failed to file an answer or a responsive pleading. Local Church also filed a motion for an extension of time in which to respond to the National Body's summary judgment motion. On May 6, 2020, the National Body filed a response objecting to Local Church's motion to have its amended complaint accepted, averring in part that the National Body had filed an answer to Local Church's original petition as well as a motion for summary judgment. Mother Church then filed a motion for summary judgment on May 11, 2020, arguing that Local Church could not prevail because it had not "properly disaffiliated" from Mother Church or the National Body and did not have a rightful claim to the Property under the Manual. Mother Church also asserted that Local Church could not establish a *prima facie* claim of conversion or intentional interference with a business relationship.

Local Church filed a response to the National Body's motion for summary judgment on May 12, 2020, arguing that a genuine issue of material fact existed concerning the Property's ownership and that the ecclesiastical abstention doctrine did not apply because ownership of real property was at issue. Among other documents, Local Church attached to its response an affidavit executed by Jeffrey Dawson, who identified himself as a deacon and treasurer of the East 8th Street Church of God. Regarding any financial assistance received from the National Body, Mr. Dawson stated that "East 8th Street Church of God has not knowingly received funds for assistance from National Body" and that "[a]ny assistance allegedly received by East 8th Street Church of God from National Body came by way of Larry Lockridge in his unbeknownst efforts to work against the wishes of the Local Church."

In both its original and amended petitions, Local Church acknowledged that Mr. Lockridge had been "previously recognized by the **LOCAL CHURCH** as a deacon." Although Local Church subsequently responded to Mother Church's summary judgment motion, Local Church did not file a response specifically addressing Mother Church's statement of undisputed material facts. One of those factual statements concerned Mr. Lockridge, indicating that he had been a member of Mother Church for approximately sixty-one years and that in addition to serving as a deacon, he had been Mother Church's treasurer for approximately twenty-nine years.

On May 14, 2020, Local Church filed a response to Mother Church's counterclaim, denying substantive allegations and maintaining, *inter alia*, that Local Church represented "the traditional affiliation which has [been] worshipping since 1903" and that its trustees were the successors "to the original Trustees reflected in the handwritten [1903] deed." In response to Mother Church's counterclaim, Local Church raised affirmative defenses of failure to state a claim upon which relief could be granted and failure to allege a superior claim of ownership to the Property. Also on May 14, 2020, Local Church filed a motion for default judgment against the National Body, which it amended on the same day. Local Church concomitantly filed a motion for continuance, requesting ninety days to conduct discovery.

The National Body filed responses objecting to Local Church's motions for default judgment and continuance on June 1, 2020, noting that it had filed an answer to Local Church's petition and a motion for summary judgment in response to Local Church's petition and complaint. Local Church subsequently filed an "Amended Provisional Motion for the Previously Filed Amended Complaint to be Deemed Accepted," wherein Local Church's trial counsel acknowledged that the National Body had filed an answer to the complaint and "assume[d] full responsibility for not being abreast of the filing" of the answer.

- 8 -

Following a hearing, the trial court entered an order on June 12, 2020, granting Local Church's motion for ninety days in which to conduct discovery and Local Church's late-filed motion to amend its complaint. The court denied Local Church's motion for default judgment against the National Body. The court also, *inter alia*, directed Local Church to deposit a certified check in the amount of $30,000 with the clerk and master as interpleaded funds, which it did. The National Body subsequently filed an answer in response to Local Church's amended petition, and the parties filed various responses to the competing motions for summary judgment.

The trial court conducted a hearing on Defendants' respective motions for summary judgment on January 4, 2021. In an order entered on February 22, 2021, the court granted summary judgment in favor of Defendants on the property dispute, finding that the Manual governed ownership of the Property, with the effect that the Property belonged to the National Body and was held in trust by Mother Church. The court also found that because Mother Church was the congregation that had "remained loyal to the faith during the congregational split," the National Body and Mother Church, as "represented by Defendants and Trustees Larry Lockridge, Thaggett Polk, and Rita Polk," were the "rightful owners of the Property." The court thereby dismissed Local Church's claim to quiet title. Finding that "[a]t its heart, this case presents the ecclesiastical question of how a local congregation can leave the larger church," the court determined that the ecclesiastical abstention doctrine precluded declaratory judgment as to the independence sought by Local Church because such was "not a matter for the courts to handle." Accordingly, the court dismissed Local Church's claims for intentional interference with a business relationship and conversion.

Local Church filed a notice of appeal with this Court on March 2, 2021. It subsequently filed a motion for stay pending the appeal pursuant to Tennessee Rules of Civil Procedure 62.01 and 62.05(2). On March 30, 2021, Defendants filed a "Motion for Order of Possession," requesting that they be granted a judgment to quiet title to the Property; immediate possession of the $30,000 held by the clerk and master; immediate possession of all bank accounts held by Local Church "for the benefit of the congregation worshipping at the Property"; "[i]mmediate control and possession of all real property, personal property, and assets located within the Property"; and "all items within [Local Church's] possession needed to operate and maintain day-to-day operations." Defendants also requested reasonable attorney's fees and expenses and entry of a final order. Finally, Defendants sought to non-suit their counterclaim for pecuniary, nominal, and punitive damages upon the granting of these requests. Defendants subsequently filed a response objecting to Local Church's motion for a stay pending appeal.

Following a hearing, the trial court entered an order on April 30, 2021, granting in part Local Church's motion for a stay upon accepting a condition proffered by Local

Church that it would pay $600 per month, to be held by the clerk and master, for the use and occupancy of the Property and that it would be responsible for the expenses related to the Property, including taxes. The court directed that the $30,000 held by the clerk and master and some $7,000 held in Local Church's bank account would be released to Defendants. On May 7, 2021, without further hearing, the trial court entered a "Final Order Resolving All Issues in this Matter," maintaining its stay order and further clarifying the expenses related to the Property for which Local Church would be responsible. The court also ordered that Defendants' "claims for damages under its Counterclaim have been waived and voluntarily non-suited, which includes any amounts sought by [Defendants] for attorneys' fees." This Court then treated Local Church's previously filed premature notice of appeal as timely pursuant to Tennessee Rule of Appellate Procedure 4(d).

Defendants subsequently filed a motion, pursuant to Tennessee Rule of Appellate Procedure 7(a), requesting that this Court review the trial court's stay order, and Local Church concomitantly filed a response opposing the motion. This Court denied the motion to review the stay order on July 15, 2021. On August 27, 2021, Local Church filed a motion with this Court, seeking to supplement the appellate record with its response to Defendants' Rule 7(a) motion and attachments, which included affidavits and documents not previously filed with the trial court. On the same day, Local Church filed its principal appellate brief, which included citations to the materials it sought to have supplemented. Defendants filed a response objecting to the motion to supplement, arguing that Local Church's Rule 7(a) response contained materials not considered by the trial court when granting summary judgment.

In an order entered on September 10, 2021, this Court remanded the case to the trial court for the limited purpose of adjudicating the motion to supplement pursuant to Tennessee Rule of Appellate Procedure 24(e) and (g). The trial court entered an order on September 29, 2021, granting Local Church's motion to supplement. Defendants then filed a "Motion to Disregard 'Post-Judgment Facts' and to Strike Portions of Appellants' Brief" concomitantly with their responsive brief. In an order entered on November 2, 2021, this Court reserved Defendants' motion pending oral argument, and we will now address the motion in a subsequent section of this Opinion.

## II. Issues Presented

Local Church presents one overarching issue on appeal with three sub-issues, which we have restated as follows:

1.     Whether the trial court erred by granting summary judgment in favor of Defendants.

A. Whether the trial court erred in finding that *COGIC*, 531 S.W.3d 146, contained facts "indistinguishable" from the facts of the instant case.

B. Whether the trial court erred in finding that the principles set forth in *COGIC*, 531 S.W.3d 146, are applicable to this action.

C. Whether the trial court erred by construing the purportedly unauthorized act of a Local Church officer of accepting financial assistance from the National Body to be an official action of Local Church.

Defendants raise two additional issues, which we have likewise restated as follows:

2. Whether Local Church has waived issues on appeal by failing to list them as issues in their statement of the issues, properly raise them in the trial court, or develop more than skeletal arguments without citations to supporting authority.

3. Whether Local Church's appeal is frivolous such that Defendants are entitled to an award of attorney's fees and costs on appeal.

III. Standard of Review

The grant or denial of a motion for summary judgment is a matter of law; therefore, our standard of review is *de novo* with no presumption of correctness. *See Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015); *Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013) (citing *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010)). As such, this Court must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Rye*, 477 S.W.3d at 250. "Statutory construction is a question of law that is reviewable on a de novo basis without any presumption of correctness." *In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009).

As our Supreme Court has explained concerning the requirements for a movant to prevail on a motion for summary judgment pursuant to Tennessee Rule of Civil Procedure 56:

[W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. [574,] 586, 106 S. Ct. 1348, [89 L. Ed. 2d 538 (1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye*, 477 S.W.3d at 264-65. "Whether the nonmoving party is a plaintiff or a defendant—and whether or not the nonmoving party bears the burden of proof at trial on the challenged claim or defense—at the summary judgment stage, '[t]he nonmoving party

must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.'" *TWB Architects, Inc. v. The Braxton, LLC*, 578 S.W.3d 879, 889 (Tenn. 2019) (quoting *Rye*, 477 S.W.3d at 265). Pursuant to Tennessee Rule of Civil Procedure 56.04, the trial court must "state the legal grounds upon which the court denies or grants the motion" for summary judgment, and our Supreme Court has instructed that the trial court must state these grounds "before it invites or requests the prevailing party to draft a proposed order." *See Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014).

## IV. Defendants' Motion to Strike

As a preliminary matter, we first address Defendants' motion seeking to have this Court strike portions of Local Church's principal appellate brief and disregard what Defendants assert are post-judgment facts referenced in the brief. Following this Court's denial of Defendants' Tennessee Rule of Appellate Procedure 7(a) motion to review the stay entered by the trial court, Local Church filed a motion with this Court to supplement the record with its response to the Rule 7(a) motion, including affidavits and documents it had attached to the response. Defendants objected to Local Church's motion to supplement, and this Court remanded to the trial court for disposition of the motion pursuant to Tennessee Rule of Appellate Procedure 24 (e) and (g). The trial court entered an order allowing supplementation of the record, stating that it was doing so "[b]ased upon arguments of counsel and the record as a whole," without providing any further rationale. Defendants contend that the trial court erred in allowing this supplementation because Local Church's Rule 7(a) response contained materials not considered by the trial court when the court granted summary judgment or when it subsequently entered its final order. Local Church essentially argues that the trial court's grant of the motion to supplement impliedly indicated the court's determination that the materials included with Local Church's response reflected what the court knew at the time it granted summary judgment. Upon careful review of the record and applicable authorities, we determine that Defendants' motion to strike should be granted.

Local Church filed its principal appellate brief simultaneously with its motion to supplement the record, including its Rule 7(a) response and attachments as an appendix to the brief.[6] Additionally, Local Church directly referenced these materials in its principal brief.[7] Defendants assert that this was "a procedurally improper and backdoor attempt to have this Court consider factual allegations that were not before the trial court

---

[6] As Defendants note, Local Church did not request that Defendants' Rule 7(a) motion and attachments be supplemented to the record.

[7] Local Church did not reference the supplemental materials in its reply brief.

- 13 -

when it ruled on summary judgment." Defendants request that this Court disregard the following eight attachments to Local Church's Rule 7(a) response:

1. June 6, 2021 Affidavit of Beverly Hardison, acting as secretary of the East 8th Street Church of God

2. A list of purported current attendees of East 8th Street Church of God

3. A list of signatures

4. A list of the East 8th Street Church of God's organizations, program, and schedules

5. June 6, 2021 Affidavit of Jeffrey Dawson

6. Local Church's notice of filing supplemental affidavits

7. June 13, 2021 Affidavit of Jeffrey Dawson

8. June 13, 2021 Affidavit of Beverly Hardison

Defendants also request that this Court strike three references to these materials in Local Church's principal brief, specifically footnote 1 on page 3 and citations to "Appendix E" on pages 6 and 18, and disregard any post-judgment facts referenced therein.

Local Church asserts that the documents supplemented to the record and attached as an appendix to its brief simply reflect "the nature and identity of the parties" and do not represent a "'backdoor'" to have this Court consider post-judgment facts. However, the affidavits included in the supplemented materials were executed in June 2021, approximately four months after the trial court entered its summary judgment order and one month after the trial court entered its "Final Order Resolving All Issues in this Matter." None of the affidavits or the materials included with them were before the trial court prior to entry of its final order. Additionally, the affiants alleged facts concerning the membership, organization, and financial status of East 8th Street Church of God that were not in evidence at the time of the final order.

We conclude that the trial court erred in granting Local Church's motion to supplement the record with Local Church's Rule 7(a) response. *See Kinard v. Kinard*, 986 S.W.2d 220, 227 (Tenn. Ct. App. 1998) ("[W]e do not customarily consider evidence that has neither been presented to nor considered by the trial judge unless it has been

made part of the record in accordance with Tenn. R. App. P. 14."). We further conclude that through this supplementation of the record and inclusion of the materials in an appendix to its brief, Local Church has sought to have this Court consider post-judgment facts without filing a motion to do so pursuant to Tennessee Rule of Appellate Procedure 14.

"This Court functions as an 'error-correcting intermediate appellate court.'" *Mosley v. State*, 475 S.W.3d 767, 774 (Tenn. Ct. App. 2015) (quoting *Alsip v. Johnson City Med. Ctr.*, No. E2004-00831-COA-R9-CV, 2005 WL 1536192, at *7 (Tenn. Ct. App. June 30, 2005)). *See McDonough v. McDonough*, 499 S.W.3d 401, 405 (Tenn. Ct. App. 2016) ("'We may not act as a fact finding court . . . or consider evidence that was not heard by the trial court.'" (quoting *Nicholson v. Nicholson*, No. M2008-00006-COA-R3-CV, 2009 WL 3518172, at *7 (Tenn. Ct. App. Oct. 29, 2009) (citations omitted in *McDonough*)). Tennessee Rule of Appellate Procedure 14(a) provides that an appellate court may consider post-judgment facts "on its motion or on motion of a party" and that "[c]onsideration of such facts lies in the discretion of the appellate court." "[C]onsideration generally will extend only to those facts, capable of ready demonstration, affecting the positions of the parties or the subject matter of the action such as mootness, bankruptcy, divorce, death, other judgments or proceedings, relief from the judgment requested or granted in the trial court, and other similar matters." Tenn. R. App. P. 14(a). *See Stacey Fair v. Clarksville Montgomery Cnty. Sch. Sys.*, No. M2017-00206-COA-R3-CV, 2017 WL 4773424, at *2 (Tenn. Ct. App. Oct. 23, 2017) ("The Advisory Committee Comments to Rule 14 indicate that post-judgment facts are appropriate for consideration when they are 'unrelated to the merits[,] [ ] not genuinely disputed, [and] necessary to keep the record up to date.'").

Although this Court may consider post-judgment facts on its own motion, *see* Tenn. R. App. P. 14(a), we find it inappropriate to do so in this case. When analyzing whether to consider post-judgment facts in accordance with Tennessee Rule of Appellate Procedure 14, this Court should not consider "evidence which it would be possible to controvert or dispute in the trial court, nor concerning the effect of which there might be differences of opinion, or from which different conclusions could possibly be drawn." *Duncan v. Duncan*, 672 S.W.2d 765, 767 (Tenn. 1984) (quoting *Crawford v. Crawford*, 181 P.2d 526, 532 (Kan. 1947)). Having determined that the affidavits and materials submitted with Local Church's Rule 7(a) response do not contain facts capable of ready demonstration, but rather contain facts that could be disputed at the trial court level, we grant Defendants' motion to strike Local Church's references to its Rule 7(a) response and the corresponding appendix in Local Church's brief, and we will not consider the supplemented Rule 7(a) response in deciding this appeal.

## V. Waiver

As an additional preliminary matter, we now address Defendants' contention that Local Church has waived issues on appeal by failing to list them as issues in its statement of the issues and by failing to develop more than skeletal arguments with few citations to supporting authority.[8] Regarding issue statements, Defendants specifically assert that Local Church has made "several challenges to the trial court's findings and conclusions" that are not represented in Local Church's statement of the issues. Defendants essentially argue that Local Church was required to raise as a separate issue any factual finding it disputed, for example, whether Mother Church was the original church body founded in 1900 or whether the National Body operated in an hierarchical structure with its affiliates. In its reply brief, Local Church does not address Defendants' waiver issue directly, focusing instead on its rationale for choosing as its "foundational issue" what it asserts is the inapplicability of *COGIC*, 531 S.W.3d 146, and for raising an issue regarding what it asserts is a "critical fact" in the trial court's summary judgment analysis of whether Local Church received financial or other support from the National Body. Upon careful review, we determine that Local Church has sufficiently stated its issues to encompass the specific challenges it makes to the trial court's findings and conclusions related to those issues. Moreover, we do not find any of Local Church's issues raised on appeal to be waived due to a failure to sufficiently argue them.

Tennessee Rule of Appellate Procedure 27 sets forth the content of briefs submitted on appeal. The appellant's brief is required to contain "[a] statement of the issues presented for review." Tenn. R. App. P. 27(a)(4). If the appellee "is also requesting relief from the judgment," the appellee's brief "shall contain the issues and arguments involved in [her] request for relief . . . ." Tenn. R. App. P. 27(b). Within the context of an application for review to our Supreme Court, our High Court has explained the importance of a statement of the issues in an appellate brief:

> Appellate review is generally limited to the issues that have been presented for review. Tenn. R. App. P. 13(b); *State v. Bledsoe*, 226 S.W.3d 349, 353 (Tenn. 2007). Accordingly, the Advisory Commission on the Rules of Practice and Procedure has emphasized that briefs should "be oriented toward a statement of the issues presented in a case and the arguments in support thereof." Tenn. R. App. P. 27, advisory comm'n cmt.

---

[8] Defendants also contend that Local Church has waived an "agency" issue by failing to raise it in the trial court, specifically Local Church's issue concerning whether the trial court erred by construing the act of a local church officer, Mr. Lockridge, in accepting financial assistance from the National Body to be an official action of the East 8th Street Church of God. We will address this aspect of Defendants' waiver argument within our analysis of Local Church's corresponding issue in a subsequent section of this Opinion.

Appellants and parties seeking relief under Tenn. R. App. P. 11 must include in their application for permission to appeal and in their brief a statement of the issues they desire to present to the court and an argument with respect to each of the issues presented. The issues should be framed as specifically as the nature of the error will permit in order to avoid any potential risk of waiver. *Fahey v. Eldridge*, 46 S.W.3d 138, 143-44 (Tenn. 2001); *State v. Williams*, 914 S.W.2d [940,] 948 [(Tenn. Crim. App. 1995)].

*Hodge v. Craig*, 382 S.W.3d 325, 334-35 (Tenn. 2012).

Likewise, this Court has repeatedly held that an issue may be waived if it is not included in the statement of the issues. *See, e.g.*, *Logan v. Estate of Cannon*, 602 S.W.3d 363, 383 n.4 (Tenn. Ct. App. 2019) (determining, in a second appeal before this Court, that an issue from the first appeal for which the appellees stated they were "renew[ing] all objection" was waived because the appellees had not raised it in their statement of the issues); *In re Conservatorship of Osborn*, No. M2020-01447-COA-R3-CV, 2021 WL 5144547, at *8 (Tenn. Ct. App. Nov. 5, 2021) (determining the appellants' argument concerning personal jurisdiction to be waived because it was not included in their issue statement raising violation of due process); *Himes v. Himes*, No. M2019-01344-COA-R3-CV, 2021 WL 1546961, at *8 n.5 (Tenn. Ct. App. Apr. 20, 2021) (determining that the appellant husband had waived his request for attorney's fees on appeal when he had stated the request solely in the conclusion of his brief and did not include it in his statement of the issues). In contrast to the examples cited here, Local Church has clearly stated its overall issue and particular sub-issues in its statement of the issues.

Defendants further contend that Local Church has waived its "remaining issues" by "provid[ing] only conclusory and skeletal arguments" in its principal appellate brief. Concerning the requirements of argument development and citations to authority set forth in Rule 27(a)(7), this Court has explained:

This court has repeatedly held that a party's failure to cite authority for its arguments or to argue the issues in the body of its brief constitute a waiver on appeal. *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006) (failure "to cite to any authority or to construct an argument regarding [a] position on appeal" constitutes a waiver of the issue); *Bean v. Bean*, 40 S.W.3d 52, 55-56 (Tenn. Ct. App. 2000) ("Courts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue.").

*Forbess v. Forbess*, 370 S.W.3d 347, 355 (Tenn. Ct. App. 2011)

As Local Church emphasizes in its reply brief, Local Church has focused two of its three sub-issues and much of its attention in this appeal on the applicability or inapplicability of the ecclesiastical abstention doctrine and related principles and to the trial court's reliance on *COGIC*, 531 S.W.3d 146, in finding that the doctrine and its principles related to church property were applicable to this case. Local Church therefore devotes much of its analysis to the details of *COGIC* with some additional citations to authorities regarding the ecclesiastical abstention doctrine. Local Church's third sub-issue regarding the trial court's finding that the East 8th Street Church of God had received support from the National Body is set forth in its principal brief with two citations to Tennessee case law and a brief explanation. We do not find that Local Church's arguments are so devoid of development or citations to authority as to constitute waiver of the related issues. We conclude that Local Church has not waived any of its stated issues on appeal through insufficient issue statements or insufficient arguments.

## VI. Summary Judgment on Church Property Dispute

Local Church contends that the trial court erred in granting summary judgment in favor of Mother Church, specifically arguing that the trial court erred in its application of the ecclesiastical abstention doctrine and hybrid neutral-principles approach to settling a church property dispute as those principles are set forth in *COGIC*, 531 S.W.3d 146. Local Church also contends that the trial court erred by construing the actions of Mother Church's treasurer, Mr. Lockridge, in accepting financial assistance from the National Body as "official" actions contributing to the affiliation of the East 8th Street Church of God with the National Body. In response, Defendants contend that the trial court properly found that no genuine issue of material fact precluded analysis according to the hybrid neutral-principles approach and thereby properly determined that under the Manual as the governing document of the National Body, the Property and associated personalty was held in trust for the National Body by Mother Church. Defendants further contend that the trial court properly determined that as the congregation aligned with the National Body, Mother Church was entitled to physical possession of the Property and associated personalty. Upon thorough review of the record and applicable authorities, we conclude that the trial court did not err in granting summary judgment in favor of Defendants on the property dispute.

## A. Ecclesiastical Abstention Doctrine and Subject Matter Jurisdiction

In its initial petition and complaint, Local Church requested in part that the trial court declare it an independent entity from the National Body "rather than allow the **NATIONAL BODY** to dictate the terms of the separation." In its amended petition,

Local Church modified its request for declaratory judgment to request a declaration solely concerning ownership of and control over the Property and associated personalty. However, in the opening sentence of its amended petition, Local Church stated that it was incorporating its original complaint "as if set out verbatim." In its summary judgment order, the trial court applied the ecclesiastical abstention doctrine to find that "[a]t its heart, this case presents the ecclesiastical question of how a local congregation can leave the larger church" and that "[c]ase law makes clear that this is not a matter for the courts to handle." On appeal, Local Church acknowledges that the process for disaffiliation is "an ecclesiastical matter in which the abstention doctrine applies." However, Local Church insists that the trial court erred in finding that the East 8th Street Church of God was ever affiliated with the National Body.

We will address Local Church's argument regarding the trial court's finding as to affiliation presently, but as a threshold matter and considering the confusion over whether Local Church was still requesting a judicial declaration that it was a separate entity, we first address the trial court's determination as to subject matter jurisdiction. *See Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 445 (Tenn. 2012) ("Challenges to a court's subject matter jurisdiction call into question the court's 'lawful authority to adjudicate a controversy brought before it,' and, therefore, should be viewed as a threshold inquiry." (quoting *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000))). In *COGIC*, our Supreme Court provided the following definition of the ecclesiastical abstention doctrine:

> The ecclesiastical abstention doctrine, also commonly known as the "church autonomy doctrine," Redwing, 363 S.W.3d at 443 n.3, precludes civil courts in this country from adjudicating "questions of discipline, or of faith, or ecclesiastical rule, custom, or law" or church polity, or the internal governance of religious organizations. Watson v. Jones, 80 U.S. (13 Wall.) 679, 727, 20 L. Ed. 666 (1871); see also Redwing, 363 S.W.3d at 448; Nance v. Busby, 91 Tenn. 303, 18 S.W. 874, 881 (1892). This doctrine is now clearly understood as deriving from the Religion Clauses of the First Amendment to the United States Constitution.

*COGIC*, 531 S.W.3d at 156 (footnote and other internal citations omitted). The *COGIC* Court held that "the ecclesiastical abstention doctrine, where it applies, functions as a subject matter jurisdictional bar that precludes civil courts from adjudicating disputes that are 'strictly and purely ecclesiastical' in character and which concern 'theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of them." *Id.* at 159 (quoting *Watson v. Jones*, 80 U.S. 679, 733 (1871)). Inasmuch as the ecclesiastical abstention

doctrine operates as a subject matter jurisdictional bar, it "may be raised at any time as a basis for dismissal of a lawsuit." *COGIC*, 531 S.W.3d at 159.

We agree with the trial court's determination that as a matter of ecclesiastical government, the procedure for separation of an affiliated member church from a hierarchical church organization is an issue over which civil courts do not have subject matter jurisdiction. *See Convention of Protestant Episcopal Church in Diocese of Tenn. v. Rector, Wardens, & Vestrymen of St. Andrew's Parish*, No. M2010-01474-COA-R3-CV, 2012 WL 1454846, at *10 (Tenn. Ct. App. Apr. 25, 2012) ("Courts presiding over church disputes must be careful not to violate the protections of the First Amendment by deciding who prevails on the basis of resolution of the underlying controversy over religious doctrine and practice."). The trial court did not err in declining to exercise subject matter jurisdiction over Local Church's initial request for a judgment declaring it to be a separate entity from the National Body.

## B. Hybrid Neutral-Principles Approach and Church Property Ownership

On appeal, Local Church's overarching issue presents the question, narrowed from its original claims, of whether the trial court erred by applying the hybrid neutral-principles approach adopted in *COGIC*, 531 S.W.3d at 167-74, to conclude that no genuine issue of material fact precluded a determination of ownership over the Property and associated personalty in favor of the National Body and possession and use of the Property and associated personalty in favor of Mother Church. In *COGIC*, relying on the United States Supreme Court's decision in *Jones v. Wolf*, 443 U.S. 595 (1979), and noting that the approach had been applied by other states in either a "strict" or "hybrid" manner, the Tennessee Supreme Court summarized that "[u]nder the neutral-principles approach, courts decide church property disputes based on the same neutral principles of law applicable to other entities, while deferring to the decisions of religious entities on ecclesiastical and church polity questions." *COGIC*, 531 S.W.3d at 167-68 (citing *Jones*, 443 U.S. at 603-04). The *COGIC* Court adopted the hybrid neutral-principles approach employed by a majority of states, explaining that "[u]nder this approach, courts defer to and enforce trust language contained in the constitutions and governing documents of hierarchical religious organizations, even if this language of trust is not included in a civil legal document and does not satisfy the formalities that the civil law normally requires to create a trust." *COGIC*, 531 S.W.3d at 168.

As our Supreme Court further elucidated:

Having reviewed prior Tennessee decisions, as well as the relevant precedent from the Supreme Court and other jurisdictions, we agree with the Court of Appeals that courts in Tennessee should apply the neutral-

principles of law approach when called upon to resolve church property disputes. We also conclude that the hybrid approach is most consistent with the analysis the Supreme Court reviewed and approved as constitutionally permissible in Jones and also most consistent with the analysis courts in this State have previously used when resolving church property disputes. In applying the hybrid approach, Tennessee courts may consider any relevant statutes, the language of the deeds and any other documents of conveyance, charters and articles of incorporation, and any provisions regarding property ownership that may be included in the local or hierarchical church constitutions or governing documents. But under the neutral-principles approach that Jones approved as constitutionally permissible, and which we adopt, a civil court must enforce a trust in favor of the hierarchical church, even if the trust language appears only in the constitution or governing documents of the hierarchical religious organization. See Jones, 443 U.S. at 606, 99 S. Ct. 3020. This understanding of the contours of the neutral-principles approach derives from the discussion in Jones of the two options available to hierarchical religious organizations for ensuring that real property owned by local member churches is held in trust for the hierarchical organization. Id. The Supreme Court stated that deeds or corporate charters may be modified "at any time before [a property] dispute erupts . . . to include a right of reversion or trust in favor of the general church." Id. "Alternatively," the Supreme Court explained, "the constitution of the general church can be made to recite an express trust in favor of the denominational church." Id. The Court described the burden required to take these steps as "minimal" and declared that civil courts would "be bound to give effect to the result indicated by the parties, provided it is embodied in some legally cognizable form." Id. Read in context, this passage from Jones contemplates two methods of establishing a trust in favor of the hierarchical religious organization—one involving modification of civil legal documents and one involving modification of the governing documents of hierarchical religious organizations. Where a religious organization chooses the second option and includes an express trust provision in its constitution or governing documents before a dispute arises, courts in Tennessee must enforce and give effect to the trust provision, even if trust language does not appear in a deed or other civil legal document. By doing so, the neutral-principles approach will provide both hierarchical religious organizations and local member congregations the flexibility and predictability that Jones envisioned, allowing these organizations to decide for themselves how property disputes will be resolved *before a dispute arises*, thus avoiding contentious, painful, time consuming, and expensive litigation and

minimizing the role of civil courts. See Jones, 443 U.S. at 603-04, 99 S. Ct. 3020.

*Id.* at 170-71 (footnote omitted).

In the case at bar, the trial court applied the hybrid neutral-principles approach to determine ownership of the Property, specifically finding:

[Local Church's] pleadings claim that [Local Church] owned the property before it joined National Body and never changed the deed, so it still owns the property. This is inaccurate.

There are three parcels of real property in dispute which were acquired between 1903 and 1972. On June 1, 1903, by handwritten deed, John C. Brown, Whit Winfield and James Green, as trustees of the Church of God, purchased from H.O. Fulton and Lucile S. Fulton the land described in Book 141 Page 29 in the Register's Office of Maury County, Tennessee.

On May 4, 1953, Tillman Frierson, Lawrence Wiggins, George Simmons, John Rawlinson and Howard F. Hutcherson, Trustees of the Church of God (Sanctified) purchased the adjoining lot to the church property from the Clerk and Master at a tax sale as described in Book 299, Page 443 in the Register's Office of Maury County, Tennessee.

On November 14, 1972, Colonel Mayberry, John Rawlinson, George Simeons, Tilman[9] Frierson and Johnie Watkins, as Trustees of the Church of God (Sanctified Church) purchased an adjoining lot to the church property from Herber[t] W. Harrison and Lillian M. Harrison as described in Book 543, Page 392 in the Register's Office of Maury County, Tennessee.

The National Body's Bylaws state that "[a]ll real estate owned or hereafter acquired by [National Body] or by any of its charges or parishes shall be deeded directly to it in its corporate name." Even though the subject real property was never deeded to the National Body, once . . . Mother Church, who is the original parish, elected to join National Body, [Local Church] and Mother Church both became bound by the Bylaws of

---

[9] As the trial court indicated, the spelling of "Tillman" contained a double "ll" in the 1953 deed and a single "l" in the 1972 deed. Additionally, "George Simmons" was listed as a trustee on the 1953 deed while "George Simeons" was listed as a trustee on the 1972 deed.

National Body. Again, [Local Church] and Mother Church received substantial benefits from its affiliation, in the form of ministerial support, emergency monetary assistance, and legal assistance.

Even though [Local Church] admit[s] that [it] did not comply with the Bylaws by transferring the property to National Body, this has no impact on whether the property belongs to National Body through the trustees of the Mother Church. As [*COGIC*] makes clear, "a civil court must enforce a trust in favor of the *hierarchical church*, even if the trust language appears only in the constitution or governing documents of the hierarchical religious organization." 531 S.W.3d at 170 (emphasis added).

This case presents facts that are indistinguishable from the material issues in [*COGIC*]. Therefore, with respect to any of the actions for which [Local Church] seek[s] a determination that involves church governance or policy, [Local Church] cannot prevail on its declaratory judgment claim as a matter of law. The church building, the bank account, and the computer were held in trust for National Body, through the Mother Church that originated in 1903, and [Local Church has] no right to them.

(Internal citations to record omitted.) Upon careful review, we agree with the trial court's determination that no genuine issue of material fact precluded a finding that the National Body owned the Property through operation of a trust.

In *COGIC*, the plaintiffs were a national not-for-profit religious corporation headquartered in Memphis, Tennessee, The Church of God in Christ, Inc., founded in 1922, and a bishop and trustees representing an affiliated member church of the national corporation, Gospel Center Temple COGIC ("Temple COGIC"), located in Moscow, Tennessee. *COGIC*, 531 S.W.3d at 150. Although Temple COGIC had been founded "'many years'" prior to the lawsuit, it was undisputed that it had been founded after the national corporation's formation and that it had "'assumed the vows of membership" with the national corporation. *Id.* Following a disagreement within Temple COGIC over the manner in which a new pastor would be chosen, a majority of the congregation formed a new church that filed a corporate charter with the Tennessee Secretary of State, giving its address as the same location as Temple COGIC. *Id.* at 151. Individuals belonging to the new church who held themselves out to be trustees of Temple COGIC then executed and recorded a quitclaim deed in an attempt to transfer the real property on which the church building for Temple COGIC was located. *Id.* at 152. In filing the lawsuit in the trial court, the plaintiffs named as defendants the new church, referred to as the "Moscow Church," and L. M. Haley Ministries, Inc., which "had been formed previously by the

founding pastor of Temple COGIC" and which also listed the Temple COGIC property as its principal place of business. *Id.* at 151-52.

It was undisputed in *COGIC* that the national corporation was a hierarchical church, divided into ecclesiastical jurisdictions, and that it was governed by "[t]he COGIC constitution, which provide[d] 'for the civil and ecclesiastical structure of the church together with laws, rules, and regulations for the entire church, including [local churches],'" which was "compiled in The Official Manual." *Id.* at 150 (footnote omitted). The *COGIC* trial court had dismissed the lawsuit, determining that the ecclesiastical abstention doctrine operated as a subject matter jurisdictional bar. *Id.* On appeal, this Court had affirmed the trial court's decision. *Id.*

The Tennessee Supreme Court reversed, however, determining that it did have subject matter jurisdiction to determine the property dispute and adopting the hybrid neutral-principles approach in doing so. *Id.* at 173. In determining that the church property had been held in trust for the national corporation, the *COGIC* Court reasoned:

> [A] property dispute clearly exists requiring a civil court to determine whether Temple COGIC property was held in trust for COGIC. As in Jones, the deed to the disputed property does not include language creating a trust in favor of COGIC. Rather, the property was conveyed to the trustees of Temple COGIC. Nevertheless, and also like Jones, the governing documents of the hierarchical church, here COGIC, includes a provision indicating that real property of local member churches "is held in trust for the use and benefit of the members of the Church of God in Christ with National Headquarters in the City of Memphis, Shelby County, Tennessee, and subject to the Charter, Constitution, Laws and Doctrines of said Church, now in full force and effect, or as they may be hereafter amended, changed or modifie[d]." This language appears not once but twice in the governing documents of COGIC. Temple COGIC agreed to be bound by COGIC's constitution and governing documents when it joined COGIC and received a COGIC membership certificate. Additionally, for many years before this dispute arose, Temple COGIC demonstrated its intent to be bound by COGIC's constitution and laws by recognizing the authority of Ecclesiastical Bishops and Pastors who were appointed pursuant to COGIC's constitution and laws. Accordingly, applying the hybrid neutral-principles approach, we conclude that Temple COGIC's real property was held in trust for COGIC.

*Id.* at 172-73.

In the instant action, Local Church asserts that the trial court erred by finding that *COGIC* "contained facts 'indistinguishable' from the facts of the instant case." We note that the trial court actually stated in its summary judgment order that "[t]his case presents facts that are indistinguishable from <u>the material issues</u> in [*COGIC*]." (Emphasis added.) Local Church argues that certain factual differences between *COGIC* and this case preclude a finding of a trust on summary judgment, particularly concerning whether the National Body is a hierarchical church, whether the Manual is the governing document for the National Body and its affiliates, and whether the East 8th Street Church of God ever affiliated itself with the National Body.

In its principal appellate brief, Local Church asserts as a distinguishing feature from the national church corporation in *COGIC* that "neither the Church of God Sanctified, Inc. corporate documents nor its Manual states clearly or unambiguously that the Church of God Sanctified, Inc. operates as a hierarchical structure ruled by the National Body." In explanation of its statement that the national Church of God in Christ, Inc., had "adopted a hierarchical structure of governance for its member churches," the *COGIC* Court cited an earlier decision of this Court involving the same national corporation as "stating that COGIC local churches operate as part of a 'connectional system'" and this Court's *St. Andrew's Parish* decision as "stating that 'connectional' and 'hierarchical' mean the same thing." *COGIC*, 531 S.W.3d at 150 n.1 (quoting *Church of God in Christ, Inc. v. Middle City Church of God in Christ*, 774 S.W.2d 950, 951 (Tenn. Ct. App. 1989); *St. Andrew's Parish*, 2012 WL 1454846, at *20 n.16). Regarding hierarchical churches, this Court has explained:

> "Hierarchical churches may be defined as those organized as a body with other churches having similar faith and doctrine with a common ruling convocation or ecclesiastical head." *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in North America*, 344 U.S. 94, 110, 73 S. Ct. 143, 97 L. Ed. 120 (1952). The United States Supreme Court has explained that when dealing with hierarchical churches the courts "are bound to look at the fact that the local congregation is itself but a member of a much larger and more important religious organization, and is under its government and control, and is bound by its orders and judgments." *Watson v. Jones*, 13 Wall. 679, 80 U.S. 679, 726-27, 20 L. Ed. 666 (1871).

*St. Andrew's Parish*, 2012 WL 1454846, at *14.

In this case, Local Church cites to no authority in support of its assertion that to be considered hierarchical, the National Body would have to expressly state in its governing documents that it is hierarchical. As Mother Church points out, the Manual sets forth a

"Legislative Policy and Procedure" for all affiliate churches, stating under a heading entitled, "Organization of a Local Church":

> Whenever three or more persons can be gathered in one place, who believe and accept the doctrine and form of government of the Church of God Sanctified, Incorporated, a church may be organized.

> All churches must be organized by persons who have been duly authorized to do the work. A church will not be officially recognized and accepted into the Church of God Sanctified, Incorporated unless approved by the Ecclesiastical Board and General Overseer, upon recommendation by the District Overseer in the region of closest proximity.

> The elected officers of an organized church shall be: Pastor, Clerk, Treasurer, Deacons, Trustees, and such others as may be deemed necessary. A local church must abide by all guidelines and policies set forth by the legislative Body of the Church of God Sanctified, Incorporated. Failure to adhere to the established guidelines may jeopardize membership. Any church that maintains an affiliation with the Church of God Sanctified, Incorporated must be deeded under that name.

> Any church that maintains an affiliation with the Church of God Sanctified, Inc. and is receiving ministerial support, emergency monetary assistance, and/or legal assistance from the Church of God Sanctified, Inc. shall cease to be an autonomous entity. The said church will be bound physically and spiritually to the Church of God Sanctified, Inc. and will conduct its affairs accordingly.

This description of the National Body's organizational structure clearly articulates that the National Body represents "a common ruling convocation or ecclesiastical head" over local churches affiliated with it. *See St. Andrew's Parish*, 2012 WL 1454846, at *14 (quoting *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 110 (1952)). Furthermore, the Manual provides for "District Overseer[s]" to oversee governance of regions within which local churches exist and for these individuals to make recommendations to a governing "Ecclesiastical Board" and "General Overseer" at the national level.

Although stopping short of conceding the point, in its reply brief, Local Church states that "it is not determinative that the National Body may have adopted a hierarchical structure (rather than producing a procedural manual) by publishing its Manual sometime in the 1970's because it is disputed whether the Local Church became a part of such

hierarchical structure."  Thus, Local Church appears to acknowledge that the Manual sets forth a hierarchical structure even while seeking to disassociate itself from affiliation with the National Body.  We determine that the trial court correctly found the National Body to be a hierarchical church, and we find no genuine issue of material fact precluding this determination.

Local Church further argues that whether the Manual is "an official bylaw or governing corporate document," as opposed to merely procedural in nature, is a genuine issue of material fact that precludes summary judgment.  In support of this argument, Local Church relies on a factual distinction between *COGIC* and the instant action:  in *COGIC*, the national church corporation's constitution was compiled together with "laws, rules, and regulations for the entire church" in an "Official Manual," *see COGIC*, 531 S.W.3d at 150, while in this case, the Manual is a stand-alone document without a constitution.  It is undisputed that the Manual was adopted by the National Body in the 1970s and that the version presented to the trial court as an exhibit was a third printing, produced in 1996.  Local Church implies that because the Manual was not created until approximately fifty years after the National Body was established in 1924, the Manual cannot be a governing document.  We find no support in the record for this implication and look to the Manual itself for a description of its purpose.

The following heading appears on the first page of the Manual:

> *The Manual of the Church of God Sanctified,*
> *Incorporated is the Supreme Law and authority of the*
> *entire body or Church.*
> *All members of said church shall be governed by and*
> *obey said manual.*

The Manual's "Preface" begins with this sentence:  "As we have commandment from the Lord that all things should be done decently and in order, we must have rules or guidelines by which to govern ourselves."   Under the first section, entitled, "The Ecclesiastical Doctrine," the Manual's "Preamble" provides:

> Whereas, all life must have law; all organizations must have government. He who is head over all things unto the church gave form and order unto His body of followers and representatives.  We seek as a church to conform to principles of government in accordance with the Holy Scriptures and divine providence, that all things may be done scripturally, decently, and in order.  The Bible teaches us not to be slothful in business.  <u>We, therefore, adopt the following form of government for the Church of God Sanctified, Incorporated</u>.

(Emphasis added.) The Preamble then includes a footnote stating: "The manual may be ordered revised by majority vote of the Ecclesiastical Board and National Council of Ministers at the National Annual Convention." The Manual is divided into six main sections, including "The Ecclesiastical Doctrine," "Legislative Policy and Procedure," "Organizational Structure," "Departmental," "The Ministry," and "Ceremonial." In his affidavit, Bishop Hill, in his capacity as General Overseer, stated that the Manual functions as the National Body's "Bylaws."

Upon careful review of the Manual and the record as a whole, we find Local Church's argument that the Manual is merely procedural and not a set of governing bylaws to be unavailing. The distinction noted by Local Church between the manual that incorporated a church constitution in *COGIC* and the Manual here is a distinction without a legal effect.

We now turn to Local Church's argument that the East 8th Street Church of God never became affiliated with the National Body such that it would be subject to the dictates of the Manual. This argument is central to Local Church's appeal because the Manual provides as follows regarding "Church Property":

1. All real estate owned or hereafter acquired by the Church of God Sanctified, Incorporated or by any of its charges or parishes shall be deeded directly to it in its corporate name.

2. All deeds by which premises are hereafter acquired for use, for a place of divine worship, shall contain the following trust clause:

   In trust, that said premises shall be used, kept, and maintained as a place of divine worship of the ministry and members of the Church of God Sanctified, Incorporated: subject to discipline, usage, and ministerial appointments of said church as from time to time authorized and declared by the General Assembly and the Trustee Board. This provision is solely for the benefit of the grantee, and the grantor reserves no right or interest in the premises.

3. In no event shall the property of the Church of God Sanctified, Incorporated be mortgaged or encumbered for a current expense, nor shall the princip[al] of the proceeds of a sale of such property be so used.

- 28 -

4. Except as in this chapter or otherwise provided, and except for as the laws of the state, territory, or country in which the property is located, prescribed otherwise, property belonging to a charge may be mortgaged or sold and conveyed by the Board of Trustees, but only with the written consent of the General Overseer and the Elder in charge, and with the authorization of the Board of Elders or Trustee Board by a majority of those present and voting at a regular or call meeting of said Board.

5. With the consent of the General Overseer and a majority of the Ecclesiastical Board, the General Assembly may declare any charge or church discontinued or abandoned. Upon a charge or church being thus, discontinued or abandoned, it shall be the duty of the Board of Trustees to make such disposition of the property thereof, as the Administrative Board may direct, and if no such lawful Trustees remain or if for any reason said Trustees fail to make such disposition, then it shall be the duty of the Trustees who are ipso facto the Administrative Board to sell or dispose of said property with the direction of the General Overseer.

Local Church maintains that it represents the East 8th Street Church of God as it has been in existence since 1900 and that its church, although "aligned" with the National Body, never took actions to affiliate itself with the National Body. In support of its position, Local Church specifically argues that (1) its language requesting disaffiliation in the initial complaint and petition and in its trial counsel's August 2019 letter to Bishop Hill should be disregarded; (2) in contrast to the local church's affiliation with its national church in *COGIC*, the 1900 establishment of the East 8th Street Church of God predated the 1924 establishment of the National Body, indicating its independence; and (3) as a prerequisite to affiliation, the East 8th Street Church of God congregation never authorized the receipt of assistance from the National Body. We will address each of Local Church's affiliation arguments in turn.

First, Local Church acknowledges on appeal that at the inception of this lawsuit and during earlier communication with the National Body, it was requesting disaffiliation from the National Body, implying Local Church's recognition that it was at that time affiliated with the National Body. In its May 2020 response to the National Body's statement of undisputed material facts, Local Church admitted that it had "at one time" requested disaffiliation but stated that it had not requested disaffiliation in its amended petition. As Mother Church points out, however, Local Church's amended petition began with the following sentence: "Now come the Plaintiffs pursuant to T.R.C.P. 15 and

amends the original complaint filed and incorporates such including, signatures and exhibits herein as if set out verbatim."

Additionally, in his affidavit filed concomitantly with Local Church's response to Mother Church's facts, Mr. Dawson, even while disavowing that Local Church had received assistance from the National Body, stated: "East 8th Street Church of God notified the National Body of its intent to <u>disaffiliate</u> through legal counsel." (Emphasis added.) Additionally, in December 2020, Local Church argued in its amended response to the National Body's summary judgment motion, also incorporated into its amended response to Mother' Church's summary judgment motion, that to determine the "real owner" of the Property, "a trier of fact must also determine if at the time that <u>the local church became affiliated with the National Body</u> property previously owned by the Local Church could not automatically become property held in trust for National Body without the Local Church transferring its rights to said property." (Emphasis added.)

Local Church posits that "'affiliated' in the context of this case is a term of art," stating that Local Church's trial counsel "belatedly recognized the legal meaning of 'affiliation' as used by the National Body and corrected his use of the term 'disaffiliation'" when amending Local Church's petition and responding to the National Body's statement of undisputed facts. This Court has previously noted that "the term 'affiliate' may denote myriad affiliations." *Dolman v. Donovan*, No. W2015-00392-COA-R3-CV, 2015 WL 9315565, at *4 (Tenn. Ct. App. Dec. 23, 2015). In a legal context, the word "affiliate" has been defined as "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." BLACK'S LAW DICTIONARY 63 (8th ed. 2004). The manner in which "affiliated" is utilized in the Manual comports with this common legal definition in that as a hierarchical church, the National Body exerts control over the local churches it "recognize[s]" and "accept[s]."

The point at which Local Church balks at use of the term, "affiliated," is when the term implicates ownership of church property. We note Local Church's attempt to disavow its prior use of the term, "disaffiliated," as an implication that it was ever affiliated with the National Body. However, we also will not turn a blind eye to Local Church's prior use of the term as represented in the record before us.

Second, Local Church contends that a determinative distinction between this case and *COGIC* is that the East 8th Street Church of God was established in 1900, twenty-four years prior to the National Body's establishment, unlike Temple COGIC, which was founded years after the national religious corporation and, at the time of its founding, "'assumed the vows of membership with [COGIC] and declared it[s] willingness to submit to and abide by the government'" of the national corporation. *COGIC*, 531

- 30 -

S.W.3d at 150.  Local Church maintains that the East 8th Street Church of God never made a commitment to abide by the governance of the National Body as Temple COGIC did to its national religious corporation.

In its statement of facts submitted with its summary judgment motion, the National Body, citing Bishop Hill's affidavit, stated that the Church of God Sanctified, Inc. (the National Body), was formed in 1900 and that the East 8th Street Church of God joined it in 1903.  Local Church responded with a correction that Defendants acknowledge is accurate and that the trial court reiterated in its summary judgment order: the East 8th Street Church of God was formed in 1900 and acquired its original parcel of land in 1903 at the location it still occupies.  The National Body was originally formed from the East 8th Street Church of God in 1924 with the East 8th Street Church of God as a member.  In its responses, Local Church acknowledged that the East 8th Street Church of God became a "member" of the National Body in 1924.  Local Church insists, however, that the East 8th Street Church of God congregation never agreed to be governed by the Manual, which was produced by the National Body in the 1970s.

Defendants contend that the distinction in the timing of the member church's affiliation with the national religious organization is immaterial because "[b]y being a member of the hierarchical church, the affiliate church agreed to submit to these rules." We agree with Defendants on this point.  The *COGIC* Court determined that "Temple COGIC agreed to be bound by COGIC's constitution and governing documents when it joined COGIC and received a COGIC membership certificate."[10]  *Id.* at 173.  Although Local Church takes issue with the term, "affiliate," it has been unable to deny that the East 8th Street Church of God became a member congregation of the National Body in 1924 and that it remained a member through the National Body's adoption of the Manual in the 1970s and through the point in August 2019 when Local Church, acknowledging the authority of Bishop Hill as the National Body's General Overseer, sought to separate itself by notifying Bishop Hill of its intent.  *See id.* (stating that Temple COGIC had also "demonstrated its intent to be bound by COGIC's constitution and laws by recognizing the authority of Ecclesiastical Bishops and Pastors who were appointed pursuant to COGIC's constitution and laws").  Local Church presented no evidence that as a member church, the East 8th Street Church of God had ever protested the National Body's adoption of the Manual or sought to be free of its strictures prior to Local Church's 2019 separation attempt.

---

[10] Local Church also notes as a fact purportedly distinguishing this action from *COGIC* that no membership certificate to the National Body was in evidence.  As Defendants point out, the existence of a certificate was one of several facts in *COGIC* listed as examples of the local church's membership in the national religious corporation.  *See COGIC*, 531 S.W.3d at 173.  We do not find the lack of a certificate here to be determinative.

Third, Local Church contends that the East 8th Street Church of God congregation never authorized the receipt of assistance from the National Body and thereby never became subject to governance under the Manual. In his letter written in response to Local Church's disaffiliation request, Bishop Hill cited the following language from the local church organization section of the Manual: "Any church that maintains an affiliation with the Church of God Sanctified, Inc. and is receiving ministerial support, emergency monetary assistance, and/or legal assistance from the Church of God Sanctified, Inc. shall cease to be an autonomous entity." In his affidavit, Bishop Hill stated that the East 8th Street Church of God had "received ministerial support, emergency monetary assistance, and legal assistance from the National Body since its membership." In response to the National Body's "undisputed fact" regarding this assistance, Local Church stated in part: "Deny that [Local Church] knowingly received ministerial support, emergency monetary assistance and legal assistance from the National Body."

The trial court in its summary judgment order found regarding the issue of assistance:

> [Local Church] do[es] not dispute that the Mother Church received financial and other assistance from the National Body. In [Local Church's] Response to Defendant[s'] Statement of Undisputed Facts No. 4, [Local Church] state[s] they deny "knowingly" receiving such support. This Court does not interpret that response as a dispute to Defendant[s'] Statement No. 4.

Thus, in finding the East 8th Street Church of God's receipt of assistance from the National Body to be undisputed, the trial court did not ignore Local Church's response. Instead, the court found the claim that Local Church did not know about the assistance received to be essentially a non-denial.

In his May 2020 affidavit filed on behalf of Local Church, Mr. Dawson, holding himself out as "a Deacon and Treasurer of East 8th Street Church of God (referred to sometimes as 'Local Church')," stated the following concerning assistance from the National Body:

> Any assistance allegedly received by East 8th Street Church of God from National Body came by way of Larry Lockridge in his unbeknownst efforts to work against the wishes of the Local Church.

> The alleged adverse actions of Larry Lockridge were completely done without the Local Church's knowledge or permission.

* * *

East 8th Street Church of God provided economic support for its ministerial staff.

East 8th Street Church of God did not receive emergency monetary assistance.

East 8th Street Church of God provided ten percent (10%) to the National Body of its monthly receipts of tithes and offerings.

East 8th Street Church of God did not receive legal assistance from the National Body.

East 8th Street Church of God forwarded $7,500 in 2005 or 2006 to the National Body for its new building venture.

* * *

Local Church has utilized its own financial resource for property upgrades as shown with the attached paid invoices.

(Paragraph numbering omitted.) Mr. Dawson attached to his affidavit, *inter alia*, invoices for repairs made to the church building and parking lot on the Property.

Defendants do not dispute Local Church's assertion that the East 8th Street Church of God has spent its own funds over the years on repairs or that it has tithed to the National Body. However, as Defendants note, these facts do not negate the East 8th Street Church of God's receipt of various types of assistance from the National Body. As the trial court found, Local Church's argument centers on its claim that its members did not know that Mr. Lockridge had accepted financial assistance from the National Body. Local Church has not refuted Mother Church's factual statement describing Mr. Lockridge as a member of the East 8th Street Church of God for approximately sixty-one years and its treasurer for approximately twenty-nine years.

On appeal, Local Church couches its argument concerning Mr. Lockridge's actions as treasurer as an issue of agency, asserting that Local Church disputes whether Mr. Lockridge was "an authorized agent of the Local Church to accept any benefits." Defendants contend that Local Church has waived any such agency argument by failing to raise it before the trial court. Although Local Church has more clearly articulated an

agency argument on appeal than it did in the trial court, we note that Local Church labeled Mr. Lockridge as an "agent and operative" of the National Body throughout its pleadings and that by denying knowledge of Mr. Lockridge's actions as treasurer, Local Church implied that he had not acted as an authorized agent of Local Church's members. We therefore decline to deem Local Church's agency argument waived. However, upon consideration of this argument in light of the record before us, we determine it to be unavailing.

As this Court has recently explained:

> A principal is "vicariously liable for the negligent acts of its agent when the acts are within the actual or apparent scope of the agent's authority." *Abshure v. Methodist Healthcare-Memphis Hosps.*, 325 S.W.3d 98, 105 (Tenn. 2010). In Tennessee, an agency relationship "does not require an explicit agreement, contract, or understanding between the parties." *White v. Revco Disc. Ctrs., Inc.*, 33 S.W.3d 713, 723 (Tenn. 2000). Instead, agency "includes every relationship in which one person acts for or represents another." *Id.* (quoting *Kerney v. Aetna Cas. & Sur. Co.*, 648 S.W.2d 247, 253 (Tenn. Ct. App. 1982)). Whether an agency relationship exists "is a question of fact under the circumstances of the particular case; and whether an agency has been created is to be determined by the relation of the parties as they in fact exist under their agreement or acts." *Id.* (quoting *McCay v. Mitchell*, 463 S.W.2d 710, 715 (Tenn. Ct. App. 1970)). The party alleging the existence of an agency relationship has the burden of proving it exists. *Sloan v. Hall*, 673 S.W.2d 548, 551 (Tenn. Ct. App. 1984).

*Hashi v. Parkway Xpress, LLC*, No. M2018-01469-COA-R3-CV, 2019 WL 5431858, at *4 (Tenn. Ct. App. Oct. 23, 2019) (emphasis added).

Again, Mr. Lockridge undisputedly served as the treasurer of the East 8th Street Church of God for approximately twenty-nine years. In the section of the Manual entitled, "The Ministry," the National Body delineates specific roles and offices within local churches. The Manual describes the office of the treasurer in a local church as follows:

1.     The treasurer of the church shall be elected by the church or the Pastor may appoint one.

2.     The treasurer should be a person who owns some property and a person of undisputed character, and if necessary, . . . shall give bond.

3. The treasurer shall keep a record of all funds received and disbursed, and shall pay out none except by order signed by the Pastor, clerk, and bank money themselves (or by a banking committee) and turn over all church belongings to the successor in office.

(Ellipsis denoting illegible word on copy in record.)

Local Church has presented no proof that these requirements for the office of treasurer were not followed when Mr. Lockridge served as treasurer and no proof whatsoever that Mr. Lockridge misused church funds or that he fraudulently obtained funds for the East 8th Street Church of God from the National Body. As a representative of the church in financial matters, Mr. Lockridge acted as the church's authorized agent. Local Church simply claims its members' ignorance of Mr. Lockridge's acceptance of assistance on behalf of the East 8th Street Church of God, over the span of twenty-nine years, from the National Body. We agree with the trial court that no genuine issue of material fact precluded a finding that the East 8th Street Church of God had accepted financial assistance from the National Body.

Moreover, it is also clear from the record that the East 8th Street Church of God had received ministerial support from the National Body. In fact, the dispute in August 2019 originated with the National Body's review of Mr. Bullock's role as interim pastor. Although Local Church may not have agreed with the National Body's oversight of the church's pastor, the National Body was involved with ministerial support at the local level. In its section entitled, "The Ministry," the Manual sets forth the process for "Electing a Pastor," including the District Overseer's "authority to appoint a Pastor to a local church" and involvement in setting a pastor's salary and expenses. Bishop Hill's August 2019 letter to Mr. Bullock demonstrates the National Body's oversight of the process. The trial court did not err in determining that the East 8th Street Church of God was affiliated with the National Body.

Finally, Local Church argues that because the East 8th Street Church of God possessed the deeds to the parcels comprising the Property prior to the Manual's initial publication and because the East 8th Street Church of God never altered its deeds in favor of the National Body, the trial court's finding of a trust in favor of the National Body represents an impermissible "retroactive taking" of the Property. We disagree. As the *COGIC* Court explained, the United States Supreme Court in its 1979 *Jones* decision "contemplate[d] two methods of establishing a trust in favor of the hierarchical religious organization—one involving modification of civil legal documents and one involving modification of the governing documents of hierarchical religious organizations." *COGIC*, 531 S.W.3d at 171 (citing *Jones*, 443 U.S. at 603-04).

In this case, the National Body, in establishing its written Manual, chose the second option. "Where a religious organization chooses the second option and includes an express trust provision in its constitution or governing documents before a dispute arises, courts in Tennessee must enforce and give effect to the trust provision, even if trust language does not appear in a deed or other civil legal document." *Id.* (emphasis added) (footnote omitted). As Defendants note, the National Body provided trust language in its Manual before the instant dispute arose, and we determine that the trial court correctly found the trust language to be effective. We conclude that no genuine issue of material fact precluded the trial court's grant of summary judgment in favor of the National Body as the owner of the Property and its associated personalty, through a trust held by the East 8th Street Church of God.

## C. Possession and Use of the Property

In *COGIC*, once our Supreme Court determined that the church property was held in trust for the national church corporation, the Court turned to the question of "which faction of Temple COGIC constitutes the faction entitled to the possession and use of the property that is held in trust for COGIC." *COGIC*, 531 S.W.3d at 173. Here, having concluded that the trial court properly determined that the Manual governs in this case and that the Property is held in trust for the National Body, the remaining question is whether the trial court correctly determined that Mother Church, as opposed to Local Church, is the congregation entitled to use and possession of the Property. Local Church asserts that Mother Church does not actually represent a congregation but only "four members described as 'agents and operatives' of the National Body." The phrase, "agents and operatives," was used as a description of Mother Church's representatives throughout Local Church's pleadings.

Local Church insists that an important distinction between the instant action and the circumstances in *COGIC* is that there are no opposing factions of the local congregation, only Local Church versus the National Body and its "agents and operatives." Recognizing Local Church's argument in this regard as an alternative argument to Local Church's ownership claim, the trial court in its summary judgment order stated in relevant part:

> Additionally, in the alternative, [Local Church] allege[s] that it is the original church located on [the Property]. In fact, the original body, which is Mother Church, split into two congregations, [Local Church] and Mother Church, during the summer of 2019 when a congregational dispute arose over who the pastor of the East 8th Street Church of God Sanctified would be.

[Local Church's] allegations are inaccurate as to being the original church, as [Local Church's] disaffiliating congregation was not in being until the summer of 2019.

Upon a thorough review of the record, we determine that the evidence presented at the summary judgment stage supports the trial court's finding that Mother Church was in place as a congregation when Local Church split from it following the dispute that culminated in August 2019 with Local Church's request to separate from the National Body. Before the trial court, Local Church relied on conclusory assertions that it comprised the original church and that the individual defendants representing Mother Church were "previously members" of Local Church. However, Bishop Hill's letter, attached to Local Church's original petition, regarding the August 2019 request to separate from the National Body and a second letter, also attached to the initial petition, from Bishop Hill to Mr. Bullock in September 2019 support the trial court's finding that a congregational split occurred in response to whether Mr. Bullock would continue as pastor of the East 8th Street Church of God. Moreover, on appeal, Local Church's sole citation to the record in support of its insistence that Mother Church does not represent a congregation and that "[t]here is no 'congregation' to worship in the East 8th Street Church of God if the National Body prevails" is to "Appendix E," a copy of the post-judgment supplement that we have previously determined must be disregarded and references to it stricken from Local Church's brief because it was not presented to the trial court at the summary judgment stage of the proceedings.

The trial court based its finding that Mother Church was entitled to possession and use of the Property on an analysis of which congregation, Mother Church or Local Church, had remained "loyal" to the National Body. The trial court relied on a 1984 pre-COGIC decision of this Court, *Presbytery of Middle Tenn. v. Madison Presbyterian Church, Inc.*, 1984 Tenn. App. LEXIS 3022 (Tenn. Ct. App. July 19, 1984), wherein this Court determined that a local church's property had been held in trust for the national hierarchical church and that the property in question was "properly the property of those remaining loyal to the denomination."[11] In the case at bar, the trial court determined that no genuine issue of material fact precluded a finding that Mother Church had "remained faithful to National Body's beliefs and denominational practices, [was] the congregation which ha[d] been present on the Property since 1903, and [was] the congregation who still abide[d] by the Bylaws [Manual]." In contrast, the trial court found that Local Church was "the new congregation who arose from the congregational dispute in summer 2019; ha[d] already expressed desires to disaffiliate from National Body for lack of

---

[11] We note that *Presbytery of Middle Tenn. v. Madison Presbyterian Church, Inc.*, 1984 Tenn. App. LEXIS 3022 (Tenn. Ct. App. July 19, 1984), predates availability of decisions on the Tennessee Administrative Office of the Courts website and is also not available through WestLaw.

denominational following; and ha[d] appointed their own pastor, deacons, and trustees outside of the requirements of the Bylaws."

However, upon careful review of our Supreme Court's decision in *COGIC* and recognizing that analysis of faithfulness to a belief system is not within the purview of a civil court, we do not find it necessary to consider "loyalty" *per se* in this analysis. In determining which of the factions before it was entitled to possession and use of the church property at issue, the *COGIC* Court, again relying on *Jones v. Wolf*, 443 U.S. 595, explained:

> As in Jones, the second question that must be answered in this appeal is which faction of Temple COGIC constitutes the faction entitled to the possession and use of the property that is held in trust for COGIC. The Defendants argue that this is an ecclesiastical question beyond the jurisdiction of civil courts to decide because it requires a determination of whether Bishop Hall is the duly appointed pastor of Temple COGIC.[12] The Plaintiffs agree that whether Bishop Hall is the duly appointed pastor of Temple COGIC is an ecclesiastical question that civil courts may not answer. However, the Plaintiffs point out that this question has already been resolved by the Ecclesiastical Council's judgment and that civil courts need only defer to this binding and final judgment of the Ecclesiastical Council when resolving the underlying church property dispute. We agree with the Plaintiffs.
>
> Again, Jones teaches that a court may constitutionally apply the neutral-principles approach to resolve a property dispute so long as the civil court avoids deciding ecclesiastical matters and defers to the resolution of issues of religious doctrine or polity by the highest court of the hierarchical church. Jones, 443 U.S. at 602, 99 S. Ct. 3020. An Ecclesiastical Council of COGIC has determined that Bishop Hall was at all times relevant to this appeal the duly appointed pastor of Temple COGIC. Our role is simply to defer to this determination in resolving this appeal. Id.; see also Hosanna–Tabor [Evangelical Lutheran Church & Sch. v. Equal Emp't Opportunity Comm'n, 565 U.S. [171,] 185, 132 S. Ct. 694, [697] [(2012)] ("Our decisions in that area confirm that it is impermissible for the government to contradict a church's determination of who can act as its ministers."). It is undisputed that, as the duly appointed pastor of Temple COGIC, Bishop

---

[12] Bishop Hall was one of the plaintiffs in *COGIC* and was the pastor who had been appointed by the national church corporation as the "Jurisdictional Bishop." *COGIC*, 531 S.W.3d at 151. The rift in factions of the local church occurred when "Bishop Hall chose to serve as pastor of Temple COGIC rather than appoint someone else to the position." *Id.*

- 38 -

Hall had the right to use and exercise control over the real property and to administer and supervise the personal property of Temple COGIC.

In light of our conclusion that Temple COGIC held its real property in trust for COGIC and the Ecclesiastical Council's determination, to which we must defer, that Bishop Hall was the duly appointed pastor of Temple COGIC, we conclude that the Plaintiffs are entitled to summary judgment on their claims regarding the real and personal property of Temple COGIC.

*COGIC*, 531 S.W.3d at 173.

In the case at bar, no ecclesiastical judgment of the National Body has been presented because Local Church did not pursue a remedy through church governance. When Local Church sought to disaffiliate from the National Body in August 2019, Bishop Hill replied with an explanation of the National Body's procedure for disaffiliation, including review of a formal request letter by the General Overseer (Bishop Hill) and the National Board of Bishops. The letter had to be signed by the local church's pastor and deacons, not simply sent through an attorney as Local Church had attempted. Rather than follow this procedure, Local Church filed its petition and complaint in the trial court.

Although no ecclesiastical judgment is in the record, we conclude that the evidence presented at the summary judgment stage demonstrates that the National Body considered Mother Church to be the congregation entitled to possession and use of the Property. This is evident from Bishop Hill's letter to the Local Church and letter to Mr. Bullock and from the National Body's alignment with Mother Church in defense of the instant lawsuit. Moreover, as the trial court found, Local Church had already sought disaffiliation from the National Body and had "appointed [its] own pastor, deacons, and trustees outside of the requirements of the [Manual]." We therefore defer to the National Body's determination, acting through Bishop Hill, that Mother Church is the congregation entitled to possession and use of the Property and its associated personalty.

### D. Summary Judgment

We conclude that no genuine issue of material fact precludes a grant of summary judgment in favor of the National Body as the owner of the Property and associated personalty held in trust by Mother Church and in favor of Mother Church as the entity entitled to possession and use of the Property and associated personalty. *See, e.g.*, *Church of God in Christ, Inc. v. L. M. Haley Ministries*, No. W2019-01411-COA-R3-CV, 2020 WL 4937993, at *8 (Tenn. Ct. App. Aug. 24, 2020) (granting summary judgment in favor of the plaintiffs, including the COGIC national religious corporation, on a church

property dispute upon deferring to an ecclesiastical council ruling and noting: "Defendants have presented no contrary ruling by a comparable COGIC body that might necessitate a factual determination by a trier of fact as to the status of Bishop Hall or the rightful disposition of church property.").

## VII. Attorney's Fees on Appeal

Relying on its waiver arguments, Mother Church contends that Local Church's appeal is frivolous such that Mother Church is entitled to an award of attorney's fees and costs incurred in defending against the appeal. As this Court has previously explained regarding frivolous appeals:

> Parties should not be forced to bear the cost and vexation of baseless appeals. Accordingly, in 1975, the Tennessee General Assembly enacted Tenn. Code Ann. § 27-1-122 to enable appellate courts to award damages against parties whose appeals are frivolous or are brought solely for the purpose of delay. Determining whether to award these damages is a discretionary decision.

> A frivolous appeal is one that is devoid of merit or one that has no reasonable chance of succeeding.

*Young v. Barrow*, 130 S.W.3d 59, 66-67 (Tenn. Ct. App. 2003) (internal citations omitted).

Similarly, Tennessee Code Annotated § 27-1-122 (2017) provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Having determined that Local Church did not "waive[] all issues on appeal," as Defendants posit, and further determining that Local Church's appeal was not so devoid of merit as to be deemed frivolous, we exercise our discretion to deny Defendants' request for attorney's fees and costs on appeal.

## VIII.  Conclusion

For the foregoing reasons, we affirm the judgment of the trial court granting summary judgment in favor of the National Body and Mother Church.  We grant Defendants' motion to strike Local Church's references to its Rule 7(a) response and the corresponding appendix in Local Church's brief.  We deny Defendants' request for attorney's fees and costs incurred on appeal.  We remand this case to the trial court for enforcement of the judgment and collection of costs below.  Costs on appeal are taxed to the appellants, Delrick Blue, Bobby Lacy, Cheryl Sweeney, Teresa Nevette, and Bernice Ryan, in their official capacities as Trustees of East 8th Street Church of God (unincorporated) f/k/a East 8th Street Church of God Sanctified (unincorporated).

s/ Thomas R. Frierson, II_____
THOMAS R. FRIERSON, II, JUDGE